**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUNHUI JIANG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> BLUECITY HOLDINGS LIMITED, BAOLI MA, ZHIYONG (BEN) LI, ZHE WEI, WEI YING, COLLEEN A. DE VRIES, AMTD GLOBAL MARKETS LIMITED, LOOP CAPITAL MARKETS LLC, TIGER BROKERS (NZ) LIMITED, PRIME NUMBER CAPITAL LLC, R. F. LAFFERTY & CO., INC., and COGENCY GLOBAL INC., <br><br> Defendants. | Case No. 1:21-CV-04044-FB-CLP |

**MEMORANDUM OF LAW IN SUPPORT OF BLUECITY HOLDINGS LIMITED'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

    A.    Parties ....................................................................................................... 3

    B.    The Initial Public Offering ....................................................................... 4

    C.    The Financials and Risk Factors in the Offering Materials Expressly and Repeatedly Alerted Investors to the Hazards of Investing in BlueCity ................. 4

        1.    Company Financials Disclosed Lack of Profitability and Net Losses ....... 4

        2.    The Company Warned About New Business Ventures in General, and BluedBaby in Particular ................................................................ 5

        3.    The Company Warned Investors About the Regulatory Landscape .......... 6

    D.    The Amended Complaint ........................................................................... 7

LEGAL STANDARD ............................................................................................................. 8

ARGUMENT .......................................................................................................................... 8

I.    PLAINTIFF'S CLAIMS ARE SUBJECT TO THE HEIGHTENED PLEADING STANDARD OF RULE 9(b) AND THE PSLRA ........................................................ 8

II.    PLAINTIFF FAILS TO PLEAD ACTIONABLE MISSTATEMENTS ......................... 9

    A.    Plaintiff's Demonstrably Inaccurate Allegations Illustrate the Inadequacy of the Amended Complaint ............................................................................... 9

    B.    Materials Incorporated in the Complaint Illustrate Plaintiff's Failure to Plead a Claim ..................................................................................................... 11

    C.    Plaintiff Fails to Allege Actionable Statements ......................................... 13

III.    PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE NON-DISCLOSURE UNDER ITEM 303 OF REGULATION S-K ...................................................................... 23

IV.    THE COURT SHOULD STRIKE PLAINTIFF'S JURY DEMAND ........................... 24

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Alcatel Sec. Litig.*,
    382 F. Supp. 2d 513 (S.D.N.Y. 2005) ................................................................................ 8

*In re Align Tech., Inc. Sec. Litig.*,
    2021 WL 1176642 (N.D. Cal Mar. 29, 2021) .................................................................. 17

*In re Anheuser-Busch InBev SA/NV Sec. Litig.*,
    2020 WL 5819558 (S.D.N.Y. Sept. 29, 2020) ................................................................. 15

*Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*,
    771 F. App'x 51 (2d Cir. 2019) ....................................................................................... 15

*Ashland Inc. v. Morgan Stanley & Co.*,
    652 F.3d 333 (2d Cir. 2011) ............................................................................................ 19

*Auctus Fund, LLC v. NuGene Int'l, Inc.*,
    2021 WL 1069462 (D. Mass. Mar. 19, 2021) .................................................................. 17

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013) .............................................................................. 24

*Barilli v. Sky Solar Hldgs., Ltd.*,
    2019 WL 2250445 (S.D.N.Y. May 23, 2019) .................................................................. 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 8

*Blackmoss Inv. Inc. v. ACA Capital Holdings, Inc.*,
    2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .................................................................... 23

*Boca Raton Firefighters and Police Pension Fund v. Bahash*,
    506 Fed. App'x. 32 (2d Cir. 2012) ................................................................................... 20

*In re Brittania Bulk Hldgs. Inc. Sec. Litig.*,
    665 F. Supp. 2d 404 (S.D.N.Y. 2009) .............................................................................. 19

*Cheng v. Canada Goose Hldgs. Inc.*,
    2021 WL 3077469 (S.D.N.Y. July 19, 2021) .................................................................. 18

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*,
    2021 WL 4481119 (S.D.N.Y. Sept. 30, 2021) ................................................................. 17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ............................................................................................ 17

*Cohen v. Avanade, Inc.*,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012) ................................................................................ 8

*In re Coty Inc. Sec. Litig.*,
    2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ................................................................. 23

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
  2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015) ................................................................ 17

*Gissin v. Endres*,
  739 F. Supp. 2d 488 (S.D.N.Y. 2010) .......................................................................... 20

*Halperin v. eBanker USA.com, Inc.*,
  295 F.3d 352 (2d Cir. 2002) ........................................................................................ 15

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021) .......................................................................... 18

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................................ 8

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
  2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) .................................................................. 18

*In re Keyspan Corp. Sec. Litig.*,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) .......................................................................... 24

*In re Lehman Bros. Mortgage-Backed Sec. Litig.*,
  650 F.3d 167 (2d Cir. 2011) ........................................................................................ 24

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
  902 F. Supp. 2d 329 (S.D.N.Y. 2012) ............................................................................ 8

*Livingston v. Cablevision Sys. Corp.*,
  966 F. Supp. 2d 208 (E.D.N.Y. 2013) .......................................................................... 17

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016) ........................................................................................ 17

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018) .......................................................................... 15

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
  681 F.3d 114 (2d Cir. 2012) ........................................................................................ 23

*In re Qudian Inc. Sec. Litig.*,
  2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ............................................................ 24

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) .......................................................................................... 8

*San Leandro Emerg. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996) .......................................................................................... 18

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015) ............................................................................ 20

*Singh v. Schikan*,
  106 F. Supp. 3d 439 (S.D.N.Y. 2015) .......................................................................... 21

*In re Vale S.A. Sec. Litig.*,
  2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ............................................................ 17

iii

*Valentini v. Grp. Health Inc.*,
   2021 WL 2444649 (S.D.N.Y. June 15, 2021)..........................................................................2

*Willard v. UP Fintech Hldgs. Ltd.*,
   527 F. Supp. 3d 609 (S.D.N.Y. 2021).................................................................................21

## Rules and Regulations

17 C.F.R. § 229.303..........................................................................................................23

Fed. R. Civ. P. 9(b)...............................................................................................1, 8, 9, 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 8

Defendant BlueCity Holdings Limited ("BlueCity" or the "Company") respectfully submits this Motion to Dismiss the Amended Complaint ("Amended Complaint" or "AC") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

This Section 11 case alleges no misstated financials, accounting malfeasance, or concealed liabilities. Instead, Plaintiff pored over hundreds of pages of offering materials looking for phrases that might, in hindsight, appear to be fraudulent. Indeed, Plaintiff's allegations amount to semantic disputes, unsupported claims that BlueCity was required to disclose information Plaintiff *pleads* was public, and conclusory assertions that government crackdown on LGBTQ-related content "fundamentally altered" BlueCity's business—without identifying any undisclosed, material changes or undisclosed material impact on the Company.

BlueCity operates an online platform for LGBTQ (lesbian, gay, bisexual, transgender, and queer, or questioning) individuals used by tens of millions of people in China, India, Korea, Thailand, and Vietnam. On July 8, 2020, the Company launched an initial public offering ("IPO"). The price of its American Depositary Shares ("ADS") declined after announcements of certain post-IPO quarterly results.

Plaintiff asserts claims under Sections 11, 12, and 15 of the 1933 Securities Act. Plaintiff's theory is essentially that BlueCity was required to, but did not, disclose the difficulties of operating an LGBTQ-focused dating app and providing other services to the LGBTQ community in China. Missing entirely are (i) allegations sufficient to show any material misstatements in BlueCity's IPO Prospectus, and (ii) facts suggesting the alleged crackdown had *any* material, negative, undisclosed impact upon BlueCity's business; conclusory sentence fragments suggesting, for instance, that website "traffic has taken a hit" are self-evidently insufficient. *See* AC ¶ 144. Indeed,

1

the Amended Complaint fails to plead that BlueCity misled anyone about anything:

*First*, Plaintiff makes demonstrably false allegations. Plaintiff's core claim is that the Company removed from its Chinese-language website materials that use such terms as "gay" or LGBTQ, while using these words freely in its English-language offering materials, which supposedly concealed the true extent of BlueCity's regulatory difficulties. But the Company's Chinese-language press releases in the period before and after the IPO used those terms regularly, which belies Plaintiff's claim.

Plaintiff also asserts that the Company falsely "hype[d] old and dying business lines as new and promising" by claiming it had launched certain dating-related "membership services" in 2018, when (according to Plaintiff) the Company supposedly launched them in 2012 when it initiated its dating app, *Blued*. AC ¶ 11. But the Prospectus, as well as an Oppenheimer Equity Research report about BlueCity dated December 10, 2020 ("Oppenheimer Report")—both of which are incorporated into the Amended Complaint—make clear the Company's dates are true and correct, and Plaintiff's allegation is wrong.[1]

*Second*, Plaintiff pleads no actionable misstatements. For instance, Plaintiff says the Company misled investors into believing it had a path to profitability when it predicted that revenue relating to certain "membership services" would increase. The alleged misstatement nowhere actually claims "membership services" would drive profits, but both the Prospectus and the Oppenheimer Report confirm that "membership services" rapidly gained subscribers and began generating revenue in the millions of RMB—as the Company predicted. The Amended Complaint

---

[1] The Court may consider SEC filings and other documents on which Plaintiff relies in the TAC. *See Valentini v. Grp. Health Inc.*, 2021 WL 2444649, at *1 (S.D.N.Y. June 15, 2021) ("[A] court may consider . . . statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff upon which it relied in bringing the suit.") (quotation omitted).

2

also alleges certain *public* regulatory actions and LGBTQ-related events in China—including by reference to an article in the widely-read *Financial Times* that pre-dated the IPO—then asserts that the Company should nonetheless have re-disclosed or even *pre-disclosed* them. Plaintiff also claims the Company misled investors about the prospects of its nascent family planning business ("BluedBaby"), even though the Company *warned* that new business ventures, *including* BluedBaby, might fail, and disclosed that BluedBaby never accounted for more than a tiny fraction of Company revenue. Plaintiff also identifies statements that are textbook puffery or protected forward-looking statements that are accompanied by 60 pages of Risk Factors.

*Third*, Plaintiff asserts a six-paragraph, makeweight claim that BlueCity breached obligations under Item 303 of Regulation S-K for failing to disclose the increasingly difficult regulatory environment. These circumstances, as the Amended Complaint itself makes clear, were already well-known and, in any case, Plaintiff fails to plead an *undisclosed* material effect on BlueCity's business. Indeed, it is likely not a coincidence that, as other competing LGBTQ-related apps failed, BlueCity's membership base has ballooned from 49 million, as disclosed in the July 2020 Prospectus, to *60 million*, as discussed in an October 2021 article (cited by Plaintiff).

The Company respectfully seeks dismissal of the Amended Complaint, with prejudice.

## BACKGROUND

### A.     Parties

BlueCity operates an online and mobile platform for the LGBTQ community in China and other parts of Asia. AC ¶ 3. Baoli Ma founded BlueCity's predecessor in 2000 and founded BlueCity in 2011. By the end of 2019, BlueCity's mobile application, *Blued*, had 49 million registered users. *See* Pr. at 115.[2]

---

[2] *See* Declaration of Xiao Liu ("Liu Decl.") Ex. A (excerpts of BlueCity IPO Prospectus dated July 7, 2020) ("Prospectus" or "Pr.").

3

Defendant Cogency Global, Inc. is BlueCity's authorized U.S. representative, and Defendant Colleen DeVries signed the Registration Statement in her capacity as Senior Vice-President of Cogency. AC ¶ 28.

Defendants Ma, Zhiyong Li, Zhe Wei, and Wei Ying are directors and officers of BlueCity who executed the Registration Statement ("Individual Defendants"). *Id.* ¶¶ 20-23.[3] Defendants AMTD Global Markets Limited, Loop Capital Markets LLC, Tiger Brokers (NZ) Limited, Prime Number Capital LLC, and R. F. Lafferty & Co., Inc., were underwriters for the Company's IPO. *Id.* ¶¶ 31-35.

Plaintiff Junhui Jiang ("Plaintiff") purportedly purchased BlueCity ADS "pursuant and/or traceable to the Offering Documents," and claims to represent a purchaser class. *Id.* ¶ 18.

**B.      The Initial Public Offering**

BlueCity completed an IPO on July 8, 2020 on the NASDAQ, pricing its ADS at $16. AC ¶ 4. BlueCity's registration statement was declared effective on July 7, 2020, and BlueCity filed its final Prospectus on July 8, 2020 (together, "Offering Materials").

**C.      The Financials and Risk Factors in the Offering Materials Expressly and Repeatedly Alerted Investors to the Hazards of Investing in BlueCity**

**1.      Company Financials Disclosed Lack of Profitability and Net Losses**

The Offering Materials disclosed that BlueCity lost millions in 2019, and that its million-plus loss in 1Q20 meant it was on track to do the same that year. *See* Pr. at 13. The Prospectus also disclosed that (i) the Company had never been profitable, (ii) a "positive trend" of declining losses "may not continue," *see* Pr. at 21, (iii) a 40% jump in "Cost of Revenues" from 2018 to 2019, a 26% year-over-year ("YOY") increase in the same category for 1Q20, and an 86% YOY increase in General and Administrative expenses for 1Q20, *see* Pr. at 95.

---

[3] As of the date hereof, we are not aware that any Individual Defendant has been served.

4

Furthermore, the Prospectus' 60 pages of "significant risks" associated with investing in the Company's ADS, *see* Pr. at 16-73, included "substantial costs and expenses" associated with product innovation, which meant the Company will "***continue to incur net losses in the future***" and expects its "***costs to increase on an absolute basis*** due to [its] continued investment in services, products, technology and development." Pr. at 16, 21 (emphases added).

Notably, total revenue results for the second, third, and fourth quarters of 2020 featured YOY revenue increases of 32%, 47%, and 24%, respectively.[4]

### 2. The Company Warned About New Business Ventures in General, and BluedBaby in Particular

The Company warned that it had to constantly pursue product and technology innovation, that it might have to revise "monetization strategies . . . which may result in decreases of [its] overall revenue," *id.* at 18, and that it might "develop and introduce new and unproven products and services," *id.* at 20. These efforts, however, might not "yield the benefits we expect to achieve at all." *Id.* The Company also specified that there were risks around its nascent family planning business, such as the "negative perception of [assisted reproduction technology, "ART"] and potentially limited demand," and that "***[u]ncertainties in laws and regulations applicable to the ART industry may materially and adversely affect our business***." Pr. at 28-29 (emphasis added). Further, if "the relevant PRC governmental authorities determine that we are providing intermediary services or advertising on unapproved ART services in the PRC," consequences could include "discontinuation or restriction of our operations in China . . . takedown of our mobile application from the app store . . . banning of the gateway to the ART consulting services, and other regulatory or enforcement actions." *Id.* at 29.

---

[4] *Id.* Ex. B (Aug. 26, 2020 Press Release) at 1; *id.* Ex. C (Dec. 2, 2020 Press Release) at 1; *id.* Ex. D (Mar. 23, 2021 Press Release) at 1.

### 3.     The Company Warned Investors About the Regulatory Landscape

The Prospectus also included robust and detailed warnings about BlueCity's regulatory environment.  The Company warned about "***complex and evolving*** laws and regulations" that are "***subject to change and uncertain interpretation***, and could result in claims, changes to our business practices, monetary penalties, increased cost of operations, or declines in user growth or engagement, or otherwise harm our business." Pr. at 19 (emphasis added).  Restrictions apply to, among other things, "providing live streaming and short video broadcasting services . . . [and] providing family planning services." *Id.*

Critically, the Company made clear that "[t]hese laws and regulations ***may be costly to comply with, and such compliance . . . may . . . increase our operating costs . . . and subject us to remedies, administrative penalties and even criminal liabilities that may harm our business***." *Id.* (emphasis added); *see also id.* at 20 ("[W]e may be required to impose more stringent content monitoring measures.").  And the Company made no secret of the fact that a *quarter of its workforce*, as of the IPO, would "review and handle content on our platform for compliance with applicable laws and regulations." *Id.* at 129.  The Company also alerted investors that "[i]f the content contained within videos, audios and other content formats on our platform is deemed to violate any PRC laws or regulations, our business, financial condition and results of operations may be materially and adversely affected." *Id.* at 32 (emphasis added).

As Plaintiffs allege, and as the Prospectus disclosed, in January 2019, the China Netcasting Services Association ("CNSA") issued regulations under which "all content of a short video . . . may be required to be reviewed in advance before the content is broadcasted," and that the Company should provide at least one reviewer for every thousand "short videos newly broadcasted on the platform per day." *Id.*  The Company warned that those regulations "***may significantly increase our compliance costs*** in recruiting additional content reviewers and training them." *Id.*

6

(emphasis added). The Company also alerted investors that in November 2019, the Cyberspace Administration of China ("CAC"), among others, issued regulations requiring providers to "establish and improve their internal policies in relation to . . . scrutiny of information publication," and that "failure to comply with these regulations may subject us to liability." *Id.* The Company also made clear to investors that "[t]o the extent that PRC regulatory authorities find *any content on our platform objectionable*, they may require us to limit or eliminate the dissemination of such content . . . or cause our app to be removed from app stores." *Id.* (emphasis added).

### D.    The Amended Complaint

Plaintiff filed the Amended Complaint on April 15, 2022, asserting causes of action under Sections 11 and 12 of the Securities Act against all Defendants, under Section 15 against the Individual Defendants, and under Item 303 of Regulation S-K, claiming the Company failed to disclose the (public) crackdown on LGBTQ content. Indeed, Plaintiff devotes a substantial portion of the Amended Complaint to alleging a years-long "crackdown on LGBTQ content online and in the media." AC ¶ 66; *see generally id.* ¶¶ 66-114. The AC alleges, among other things, shut-down of "gay dating app, Zank" in April 2017, which Plaintiff alleges was "the most well-known of a group of 18 apps . . . that the Government removed." AC ¶¶ 69-70. The AC also notes a June 2017 CNSA issuance "categorizing homosexual content alongside incest, sexual deviancy, sexual assault, sexual abuse, and sexual violence as 'vulgar,' 'obscene,' and 'pornographic.'" *Id.* ¶ 72. On November 9, 2017, according to the AC, "the popular livestreaming app Peepla, known for its same-sex content, was shut down." *Id.* ¶ 73. Plaintiff fails to plead, however, that a single crackdown-related event was not *public*, and fails to plead in non-conclusory fashion that the alleged crackdown materially affected BlueCity's business, beyond its disclosed compliance costs.

7

**LEGAL STANDARD**

"In reviewing a Rule 12(b)(6) motion, 'the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319 (S.D.N.Y. 2012). Nonetheless, a plaintiff must "allege facts showing 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* Plaintiffs cannot meet this standard by pleading only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Because Plaintiffs fail to "'nudge[] [their] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* (quoting *Twombly*, 550 U.S. at 570).

To plead a Section 11 claim, Plaintiffs must allege that Defendants made a material misstatement or omission in a registration statement. *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005). To plead a Section 12 claim, Plaintiff must allege that Defendants made a material misstatement or omission in a prospectus or related communication. *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 (S.D.N.Y. 2005). Plaintiff has failed to plead material misstatements or omissions in either the Registration Statement or the Prospectus.

**ARGUMENT**

**I.    PLAINTIFF'S CLAIMS ARE SUBJECT TO THE HEIGHTENED PLEADING STANDARD OF RULE 9(b) AND THE PSLRA**

Where, as here, "a '33 Act claim" is "predicated on fraud," Plaintiff must meet "the particularity requirement of Rule 9(b)." *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 338 (S.D.N.Y. 2012). And Plaintiff cannot avoid this burden "by summarily disclaiming any reliance on a theory of fraud or recklessness." *In re JP Morgan*, 363 F. Supp. 2d at 635; *see also* AC ¶¶ 163, 172 (purporting to disclaim fraud).

Plaintiff's allegations are "classically associated with fraud." *Rombach v. Chang*, 355 F.3d

164, 172 (2d Cir. 2004) (applying Rule 9(b) because allegations of a registration statement's "materially false and misleading written statements" sounded in fraud).  In particular, Plaintiff claims that BlueCity's IPO "appears to have been rushed to market in an attempt to cash out before it was too late."  AC ¶ 127; *see also* ECF No. 27 at 1 (Plaintiff's thesis is that the Company "launche[d] an IPO to cash out before it [wa]s too late.").  Plaintiff also claims the Company "presents material ***known*** risks to investors as hypotheticals or omits them altogether, misleading the investors and causing them to lose money when the stock inevitably crashes."  *Id.* at 1 (emphasis added).  In other words, Plaintiff tries to plead that BlueCity deliberately concealed information to induce investment, then sought to enrich itself with that investment before the information became public and spoiled Defendants' plans.  That is a textbook claim of *fraud*—not negligence.  (Regardless, Plaintiff fails to plead causes of action under any standard.)

## II.   PLAINTIFF FAILS TO PLEAD ACTIONABLE MISSTATEMENTS

### A.   Plaintiff's Demonstrably Inaccurate Allegations Illustrate the Inadequacy of the Amended Complaint

Setting aside Plaintiff's merely insufficient allegations, the Amended Complaint makes affirmative misstatements of fact.  *First*, Plaintiff claims that BlueCity launched its "membership services" in 2012, but that the Company claims to have done so in 2018 to "hyp[e] old and dying business lines."  AC ¶ 11.  Plaintiff's sole basis for this assertion is that BlueCity launched its dating app in 2012.  But the Prospectus *and* Oppenheimer Report indicate that BlueCity launched the membership services to which Plaintiff refers in 2018.  Pr. at 90; Oppenheimer Report at 3.[5]

*Second*, Plaintiff claims the Company must have concealed its true focus by, among other things, removing "homosexuality-related terms" from the *Blued* application, and that *Blued* makes "prominent use of terms like 'gay' and 'LGBTQ' in its foreign-facing materials and English-

---

[5] Liu Decl. Ex. E at 3 (Oppenheimer Report).

language Prospectus," but "avoid[s] such terms in its Chinese-language website." AC ¶ 97. This, supposedly, is "a sign that the Offering Documents glossed over and concealed the serious headwinds to profitability faced by BlueCity." *Id.*, *see also id.* ¶ 91 ("Blued removed all homosexuality-related terms from the product statement on its website.").

In fact, *before and after* the IPO, the Company's website prominently featured Chinese-language press releases that repeatedly use such terms as "gay," "LGBTQ," "pink economy," and other buzzwords commonly associated with non-heterosexual content. For instance:

- A February 25, 2020 Chinese press release refers to *Blued* as "the largest gay social networking app in India" aiming to promote "sexual minority rights" in local communities.[6]

- A July 30, 2020 Chinese press release (just weeks after the July 8 IPO) refers to *Blued* as "the world's leading LGBTQ community," "the main product of BlueCity," and the "first stock in the global pink economy."[7]

- An August 7, 2020 Chinese press release says that "[t]he successful listing of BlueCity on NASDAQ opens up . . . its 20 years of exploration and deep work in the LGBTQ community."[8]

- An August 7, 2020 Chinese press release explains that "BlueCity owns the Light Blue website, a LGBTQ (Lesbian, Gay, Bisexual, Transgender, Queer) community, as well as Blued, currently China's ***largest same-sex dating software***."[9]

---

[6] *Id.* Ex. W (February 25, 2020 press release) at 2.

[7] *Id.* Ex. F (July 30, 2020 press release) at 2-3.

[8] *Id.* Ex. G (August 7, 2020 press release) at 2.

[9] *Id.* Ex. H (August 7, 2020 press release) at 2 (emphasis added); *see also id.* (BlueCity founder took steps to "popularize related knowledge and give gay people a platform to communicate."); *id.* at 3 ("Blued, which focuses on same-sex dating"); *id.* Ex. I at 3 (August 18, 2020 press release) ("BlueCity does not just want to be a ***dating software*** or live streaming platform") (emphasis added); Ex. J at 2 (September 19, 2020 press release) ("Light Blue[] was one of the first and most influential LGBTQ online forums in China."); *id.* Ex. K at 4 (December 2, 2020 press release) ("[A]s the first LGBTQ company to be listed on NASDAQ, BlueCity is also demonstrating the originality and commitment of a listed company.").

- A November 25, 2020 Chinese press release noted that Finka—a men's dating application acquired by BlueCity—"had over 2.7 million registered users in 2019 and is an important platform for LGBTQ people in China to expand their social connections."[10]

- A December 22, 2020 press release reports Mr. Ma's description of BlueCity predecessor, Light Blue, as "attrac[ing] its first readers with its 'gay'-related current affairs information," expressly defines "LGBTQ" as a "collective term for Lesbian, Gay, Bisexual, Transgender, Queer, Intersex, Asexual and other sexual minorities," and notes that Finka is a "leading vertical social application for men in China."[11]

Plaintiff also asserts that the "cover of the English-language Prospectus touts BlueCity as the "Largest Online LGBTQ Community," while the "Chinese-language version of the blued app . . . has removed all homosexuality-related terms." AC ¶ 61. But the Company routinely refers to itself as "the world's leading LGBTQ community" or uses similar phrases in published press releases.[12] Plaintiff's assertion that "BlueCity's app does not use the word 'gay' at all," ECF No. 27 at 2 n.2, is a non-sequitur. The Company repeatedly uses terms in press releases in direct contrast to Plaintiff's allegations. (The myriad uses of such terms are highlighted in the exhibits.)

## B.    Materials Incorporated in the Complaint Illustrate Plaintiff's Failure to Plead a Claim

The Amended Complaint alleges a *public* crackdown on LGBTQ content, *see* AC ¶¶ 66-114, and therefore cannot hold BlueCity liable for purportedly failing to disclose that information. Plaintiff also fails to plead that the purported crackdown had a material effect on BlueCity's

---

[10] *Id.* Ex. L at 2 (November 25, 2020 press release).

[11] *Id.* Ex. M (December 22, 2020 press release) at 1, 2, 4, 5.

[12] *Id.* Ex. G (August 7, 2020 press release) at 2; *see also id.* Ex. N at 4 (August 27, 2020 press release) ("largest company serving the LGBTQ community in China"); *id.* Ex. O at 2 (November 4, 2020 press release) ("world's leading LGBTQ vertical community, BlueCity has over 54 million registered users worldwide."); *id.* Ex. P at 2 (November 18, 2020 press release) ("world's leading LGBTQ vertical community"); *id.* Ex. Q at 2 (December 16, 2020 press release) ("world's leading LGBTQ online community").

11

business, beyond an increase in compliance costs that the Company disclosed.  *See supra* Background § D.

Articles incorporated in the Amended Complaint illustrate both that the crackdown was public knowledge, and that Plaintiffs have failed to plead a material, negative effect on BlueCity's business from any such crackdown.  For instance, an article in the *Financial Times* from April 2019—a little over a year before the IPO—quotes the Beijing LGBTQ Centre as stating that "China's censorship of LGBTQ content will be ever more strict this year compared to last year." AC ¶ 74 (quoting article).[13]  The article details efforts to censor LGBTQ content, and concludes that "[i]n recent years, thousands of websites, blogs and individual accounts have been shut"— though not BlueCity—"while internet platforms have hired legions of censors."[14]  In other words, the Amended Complaint makes clear that the purported crackdown was already widely known in the investment and business community.

The AC appears to rely also on a public study, published in May 2020—prior to the IPO— for several allegations.[15]  For instance, two quotes attributed to Mr. Ma (a/k/a Geng Le)—that he was "the person in charge of the largest gay website in China," AC ¶ 48, and "if you tell the government that you can help with HIV/AIDS prevention, the government will be very happy," AC ¶ 49—are quoted by the article (and dated as of 2015 and 2016).[16]  *See also* AC ¶¶ 52, 53, 55, 56 (appearing to source allegations from the same article).  But, importantly, the article explains

---

[13] Liu Decl. Ex. R (C. Shepherd, "China LGBT community fears crackdown after Weibo content vanishes," *Financial Times*, Apr. 15, 2019, *at* https://www.ft.com/content/19ff4b36-5f7a-11e9-b285-3acd5d43599e) at 2.

[14] *Id.* at 3.

[15] Liu Decl. Ex. S (W. Miao & L.S. Chan, "Social constructivist account of the world's largest gay social app: Case study of Blued in China," *The Information Society*, May 18, 2020, *at* https://doi.org/10.1080/01972243.2020.1762271).

[16] *See id.* at 4.

that "Blued is interesting because it ***thrives*** in China, a country where homosexuality remains stigmatized,"[17] and that "Blued tactfully navigates the sensitive political landscape by emphasizing its essential role as a channel through which the country's gay population can be reached, thereby demonstrating its value to the state's fight against HIV/AIDS. This secures its *survival*."[18]

Plaintiff relies on another article, published on October 26, 2021—more than a year after the IPO—to try to portray BlueCity's business as tenuous and vulnerable. Plaintiff excerpts a quote that compares "[o]perating a dating app to LGBTQ+ communities in China" to "walking a tightrope." AC ¶ 63. But the article from which the quote is taken also explains that, although lesbian-affiliated dating apps "have always struggled to scale" in China, "similar apps for gay men have grown much larger," noting that *Blued* in particular "has gained over *60 million* registered members and is among the biggest gay dating apps in the world."[19]

Plaintiff's pleading failures are sufficient to dismiss the Amended Complaint, but the fact that Plaintiff's own materials are contrary to their allegations and theory of the case illustrates the insufficiency of their allegations under any pleading standard, much less Rule 9(b).

### C.      Plaintiff Fails to Allege Actionable Statements

Plaintiff identifies a handful of alleged misstatements scattered throughout the Prospectus, none of which is sufficiently alleged to be materially false. Further, certain alleged misstatements are also (i) immaterial puffery and/or (ii) protected forward-looking statements.

**Statement #1**. Plaintiff takes issue with the statement that "***we expect revenues generated from our recently launched membership services will grow quickly***." AC ¶ 115 (quoting Pr. at

---

[17] *Id.* at 8 (emphasis in original).

[18] *Id.*

[19] Liu Ex. T (Z. Yang, "Why another Chinese lesbian dating app shut down," *Protocol*, Oct. 26, 2021, *at* https://www.protocol.com/china/-lesdo-closure-lesbian-app-china) at 1.

90) (emphasis in AC). Plaintiff claims that "[i]t was misleading to suggest that BlueCity's path to profitability was its "recently launched membership services." *Id.* ¶¶ 116-118.

*First*, as discussed above, BlueCity launched its membership services in June 2018 (not 2012), Pr. at 90, earning subscribers and revenues. Paying users increased from approximately 85,000 in 2018 to ***457,000*** in 2019 (and to ***780,000***[20] by the end of 2020). *Id.*; *see also* Oppenheimer Report at 18 ("Although membership products ***are a new feature*** on the platforms, they're already well accepted by users and growing rapidly, with the number of paying members growing to 378K in 3Q:20.") (emphasis added). Membership services-related revenue increased from RMB4.7 million in 2018 to RMB36.7 million in 2019, and continued its upward trend with RMB15 million for the first three months of 2020 (or 0.9%, 4.8%, and 7.2% of Company revenues, respectively). Pr. at 95. This trend continued after the IPO: membership services revenue was nearly RMB16 million for 2Q20, RMB18 million for 3Q20, and just over RMB22 million for 4Q20—130%, 56%, and 47% YOY increases, respectively.[21] And full-year 2020 membership services revenue was RMB71 million, just short of *double* the same figure for 2019.[22]

The Company's predicted revenues materialized, and so the prediction cannot be false.

*Second*, **Statement #1** says nothing about profitability, but addresses only the Company's expectation that membership services revenue will increase—which is what happened.

*Third*, Plaintiff claims that "[w]hen investors read 'membership services,' they are instantly reminded of the extremely profitable dating apps like Tinder," AC ¶ 119, which is allegedly misleading because "nearly every major gay dating app in China except for Blued has been shut

---

[20] Liu Decl. Ex. U (Excerpts of Form 20-F for 2020 dated Apr. 29, 2021) at 98.

[21] *Id.* Ex. B (Aug. 26, 2020 Press Release) at 1; *id.* Ex. C (Dec. 2, 2020 Press Release) at 1; *id.* Ex. D (Mar. 23, 2021 Press Release) at 1.

[22] *See id.* at 2.

14

down." *Id*. ¶ 120. Plaintiff fails, however, to show that any actual investor was "instantly reminded" of Tinder. Plaintiff cites the Oppenheimer Report's reference to Tinder, apparently implying the Oppenheimer analyst was misled. But the Oppenheimer Report expressly acknowledges the "additional regulatory risks faced by LGBTQ platforms" as justification for its price "discount" to peer companies. Oppenheimer Report at 2. In other words, neither Oppenheimer, nor any other investors Plaintiff can identify, believed that *Blued* and Tinder operate in the same regulatory environment with the same prospects for success.

*Fourth*, **Statement #1** relays the Company's "expect[ation]," which is by definition forward-looking. *See In re Anheuser-Busch InBev SA/NV Sec. Litig.*, 2020 WL 5819558, at *4 (S.D.N.Y. Sept. 29, 2020) (statements about projected performance are non-actionable forward-looking statements); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 578 (S.D.N.Y. 2018) ("statements articulating the expectation" that business would turn profitable were "forward-looking statements"), *aff'd sub nom. Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019). And **Statement #1** is accompanied by 60 pages of Risk Factors in the Prospectus addressing, among other things, the Company's lack of profitability, ongoing net losses, and substantial probability that new monetization strategies would fail. *See supra* Background §§ C.1-2. As a result, no "reasonable investor could consider [**Statement #1**] important in light of adequate cautionary language." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002) (referring to "this rule of law" as "the 'bespeaks caution' doctrine."); *Barilli v. Sky Solar Hldgs., Ltd.*, 2019 WL 2250445, at *9 (S.D.N.Y. May 23, 2019) (forward-looking statements "accompanied by cautionary language such that, when examined in the context of the total mix of information, [they] would not mislead an investor," are inactionable per bespeaks caution doctrine).

**Statement #2**. The Company also stated, in the Prospectus, that "[s]ince our inception in 2011, we have strived to create a trusted community and deliver more diversified products . . . . We will continue to diversify our product and service offerings and expand our monetization channels without compromising user experience." AC ¶¶ 122-123. Plaintiff asserts this statement was misleading because the sole avenue for diversifying its products was the "healthcare space." *See id.* Plaintiff's strained allegations are insufficient to plead falsity.

*First*, Plaintiff ignores the rest of the Prospectus paragraph from which it excerpted the second part of **Statement #2**, in which the Company lists initiatives relating to live-streaming, premium content, and "more innovative advertising formats," among other things, *none* of which is healthcare-related, and none of which Plaintiff claims was false. *See* Pr. at 90-91.

*Second*, Plaintiff's claim that BlueCity's product diversification efforts were limited to the "healthcare space" depends on Plaintiff's thinly-alleged and self-serving claim that the Company could not expand its LGBTQ-focused offerings. *See* AC ¶ 123. But this claim is belied by, among other things, the expansion of membership services described above and Plaintiff's own articles, which indicate BlueCity is navigating the regulatory environment and expanded its user base from 49 million to 60 million between the IPO and October 2021, *see supra* Argument § II.C. Regardless, even if the Company were limited to innovating solely in the healthcare space, Plaintiff offers no meaningful reason that the Company's statement concerning its efforts to diversify would be false. Further, Plaintiff's characterization of "unprofitable and low margin health and health-related services" is completely unsupported by economic or other facts, nor does Plaintiff plead that BlueCity has ceased *any* services (beyond BluedBaby, addressed below). Plaintiff's claim that the Company's statement is a "half truth" unless the Company itemizes every industry into which it can and cannot diversify its products is nothing more than a "post-hoc" attempt to

16

manufacture a fraud claim. *Cf. OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 499 (3d Cir. 2016) ("OFI's post hoc scouring of countless pages of documents for a stray and inartfully phrased comment that can be argued to be technically false seems like just the sort of litigation maneuver the PSLRA was meant to eliminate."). For the same reasons, Plaintiff's assertion is not a "trend that needed to be . . . disclosed." AC ¶ 151.

*Third*, the Company's generic reference to growth and intent to diversify product offerings is not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome," and is therefore textbook puffery. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014); *see also In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *22 (S.D.N.Y. Mar. 23, 2017) (statements regarding "what Vale is … 'seeking' to do" were not actionable); *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 494 (S.D.N.Y. 2021) ("Generalized, big-picture statements … about [BlueCity's] business model" are "non-actionable puffery."). Courts routinely find similar statements about growth and products to be puffery. *See, e.g., In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *13 (S.D.N.Y. Aug. 19, 2015) ("well positioned to support growth" was puffery), *adopted by* 2015 WL 5255469, at *1 (S.D.N.Y. Sept. 9, 2015); *In re Align Tech., Inc. Sec. Litig.*, 2021 WL 1176642, at *3 (N.D. Cal Mar. 29, 2021) ("seeing tremendous growth"); *Auctus Fund, LLC v. NuGene Int'l, Inc.*, 2021 WL 1069462, at *6 (D. Mass. Mar. 19, 2021) ("growth potential is limitless"); *Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 220 (E.D.N.Y. 2013) (that "Cablevision 'can continue to provide superior products . . . is quintessential inactionable puffery"). Further, in the context of the Company's candid disclosures about profitability and net losses, no reasonable investor could have regarded **Statement #2** as anything beyond basic corporate puffing.

17

**Statement #3**. Plaintiff assails the statement that "*we launched multiple new businesses, which have shown considerable early success with significant monetization upside*." AC ¶ 124 (quoting Pr. at 118) (emphasis in Amended Complaint). As with **Statement #1**, Plaintiff claims BlueCity made this statement to convince investors that BlueCity could become profitable through means other than live-streaming services. *See id.*

*First*, as with **Statement #1**, **Statement #3** makes no claim at all about profitability.

*Second*, Plaintiff claims **Statement #3** was false to the extent it referred to BlueCity's family planning business, BluedBaby. Plaintiff alleges not a single misstated or undisclosed, "contemporaneous" fact suggesting the statement was false when made. *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302 (S.D.N.Y. 2021) ("Because post hoc description[s] of events do[ ] not speak to what the Company knew or should have known at the time of time of the Offering, plaintiffs' Section 11 claim must be dismissed as to all defendants.") (quotation omitted).

Plaintiff refers instead to the Company's statement—made nine months after the IPO— that family planning "never gained great traction." AC ¶ 128. But the Company disclosed in the Prospectus that BluedBaby never earned more than a tiny fraction of overall Company revenue, and so investors could judge for themselves whether BluedBaby had "traction," as well as whether "early successes" was true. *See* AC ¶¶ 127-129; *see also In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at *4 (S.D.N.Y. Jan. 10, 2017) (rejecting inference that company knew, at time of IPO, of business strategy change that took place four months later); *Cheng v. Canada Goose Hldgs. Inc.*, 2021 WL 3077469, at *8 (S.D.N.Y. July 19, 2021) ("statements about the company's goal or plan . . . were not promises to maintain that policy in the future, and thus were not rendered misleading by . . . an alternative plan") (quotation omitted); *San Leandro Emerg. Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996) (offering materials "simply

18

reflect[] company policy at the time" and are not "promises to maintain that policy in the future" or "rendered misleading by the company's subsequent consideration of an alternative plan.").

*Third*, "monetization upside" is a prediction and therefore inherently forward-looking. It is likewise accompanied by the Company's disclosures concerning profitability, net losses, and the substantial likelihood that new initiatives generally, and BluedBaby in particular, might well fail. *See supra* Background §§ C.1-2. Further, "the company disclosed the very . . . risks about which [a plaintiff] claim[s] to have been misled," so Plaintiff cannot claim falsity. *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 338 (2d Cir. 2011)); *see also In re Brittania Bulk Hldgs. Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 413 (S.D.N.Y. 2009) ("An alleged misrepresentation or omission is immaterial as a matter of law where [it is] 'sufficiently balanced by cautionary language within the same prospectus such that no reasonable investor would be misled about the nature and risk of the offered security.'").[23]

**Statement #4**. Similarly, Plaintiff identifies BlueCity's statement that BluedBaby was "launched [] in 2017 to provide users with personalized assisted reproduction consultation services" and that "we are in the early stage of developing our health-related services and family planning services, currently [] accessible through the domestic version of Blued." AC ¶ 125.

Plaintiff claims that, because BluedBaby launched in 2017, it was not "early stage," which is little more than word play. Plaintiff offers no definition or authority setting a time limit on the

---

[23] Plaintiff asserts that "two years into BluedBaby . . . the business had yet to produce a single baby." AC ¶ 127. Plaintiff's source for this might be a *Bloomberg* article that the first baby born via BluedBaby was expected on April 9, 2019. *See* https://www.bloomberg.com/news/features/2019-03-21/a-chinese-dating-app-for-gay-men-is-helping-them-have-kids-too. The article also makes clear—including to investors—that connecting Chinese couples to U.S. surrogates is difficult, especially in light of Chinese law on the topic. Further, BluedBaby could not immediately have begun to "produce" babies upon its launch in July 2017, given they typically take nine months to be born.

use of "early stage," nor even that "early stage" is measured solely by time, as opposed to, for instance, revenue generation. And the Prospectus *disclosed* to investors that BluedBaby launched in July 2017. AC ¶ 126. Investors could therefore decide for themselves whether the term "early stage" was appropriate. *See Gissin v. Endres*, 739 F. Supp. 2d 488, 510 (S.D.N.Y. 2010) ("The securities laws do not require that investors be treated like children.").

**Statement #5**. The Prospectus states that BluedBaby's revenue-generating services include "comprehensive consulting and administrative services to our customers such as ongoing facilitation of physical checks, remote conference with global experts, visa application support, and logistics arrangement for overseas trips," and that the Company "collect[s] consulting service fees from customers of our family planning service." AC ¶ 126.

Plaintiff fails to plead this statement was false. Plaintiff nowhere claims BluedBaby did *not* earn revenues from the foregoing services, nor that a single revenue figure was false, and it is well-established that statements of historical fact are inactionable. *See Boca Raton Firefighters and Police Pension Fund v. Bahash*, 506 Fed. App'x. 32, 38 (2d Cir. 2012) ("[E]asily rejected" argument that defendant's "statements about its earnings were actionable, even though literally true, because they did not acknowledge the long-term unsustainability of its business model."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 537 (S.D.N.Y. 2015) (objective facts about company's business plan not false or misleading).

**Statement #6**. Plaintiff claims the Company misled investors with the warning that "in early 2018, dozens of apps for the LGBTQ community, including *Blued*, were blocked by the Google app store upon the request of the Indonesian government." AC ¶ 130. This language was supposedly misleading because it left the impression (upon unidentified investors) that the same concerns did not exist in China. *Id.* ¶ 131. The same language warns that "although the Company

20

does "not expect that any government that permits us to carry on our business activities will reverse the policy," that the Company "cannot guarantee that we will continue to be able to provide our services *in any jurisdiction* where we currently have legal authority to do so." *See id.* ¶ 130 (emphasis added).

Plaintiff fails to plead this statement was misleading. As discussed above, investors were well-acquainted with the regulatory landscape in China, both through public acts, events, and publications, and the Prospectus' detailed warning language. *See supra* Background §§ C, D; *see also* AC ¶¶ 66-114 (pleading *public* acts and events). Any purported non-disclosure was therefore, in any event, immaterial. *See Singh v. Schikan*, 106 F. Supp. 3d 439, 446 (S.D.N.Y. 2015) ("actionable omission" requires showing of "'a substantial likelihood that the disclosure of the omitted fact,' when considered in the Offering Documents' entire context, 'would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'"); *Willard v. UP Fintech Hldgs. Ltd.*, 527 F. Supp. 3d 609, 622-24 (S.D.N.Y. 2021) (total mix of information rendered any non-disclosures immaterial under Item 303). And the Company makes clear that it cannot guarantee survival in *any jurisdiction*—which includes China.

Plaintiff claims the Company's statement that it did not expect to be prohibited from carrying on its business was misleading because it "omits the fact that BlueCity has made fundamental changes to its business out of fear of Government shutdown and censor, and will continue to do so." AC ¶ 132. But beyond alleging that BlueCity's compliance costs have increased, Plaintiff fails to identify "fundamental changes" to the underlying business—at most, Plaintiff pleads careful messaging and politicking, as well as a *disclosed* compliance infrastructure. *See supra* Background § D. And the potential need for BlueCity to adjust or adapt to regulations,

and even that it might not be able to (which thus far has not occurred) was amply disclosed in the Prospectus. *See supra* Background § C.

**Statement #7**.   The Prospectus warns that certain January 2019 CNSA regulations (addressed above) "***may significantly increase our compliance costs in recruiting additional content reviewers and training them***."   AC ¶ 133 (emphasis in Amended Complaint).   Plaintiff claims it was misleading to use "may" where the risk had already materialized.   Here, "may" refers specifically to the January 2019 CNSA regulations, but Plaintiff pleads no *facts* indicating those regulations had increased Company compliance costs.   Further, Plaintiff's allegation that as of December 2020 the Company had "197 full-time" content monitors out of 755 total employees results in the same 25% ratio of monitors to total employees that existed as of the IPO, and was disclosed in the Prospectus.   AC ¶ 111; *see also* Pr. at 129.   In other words, the Company's "censorship team" had not "grown dramatically," AC ¶ 111; the Company simply maintained the same ratio of monitors to employees as the Company grew.   And Plaintiff fails to allege that the proportion was insufficient, or to plead some other, *undisclosed* augmentation of the Company's monitoring staff and costs.   It follows that Plaintiff's assertions that compliance costs are a big part of the reason the Company is not profitable, or that they were "overwhelming," "runaway," or "enormous," are not supported by *facts* about the actual costs, nor any non-conclusory assertions that those costs were undisclosed.   *See* AC ¶¶ 60, 64, 111.

Plaintiff's additional makeweight allegations fail.   The self-serving claim that the Prospectus "severely understates the seriousness of the current political situation facing the LGBTQ community in China" is simply incorrect.   AC ¶ 135.   In fact, the Prospectus' warning language addresses the penalties and other potential impacts on the Company of breaching regulations.   *See supra* Background § C.   Again, all of Plaintiff's allegations about the "political

22

situation" refer to public events, which is the context in which investors would read the Prospectus. And Plaintiff's assertion that "fear of using the *Blued* app" is "hurting its userbase and growth" comes with no factual support; the allegations purportedly discussing the fear of using LGBTQ-focused dating apps indicate that people are "cautious" and "discrete," *see* AC ¶¶ 82, 85, not that they have stopped. And, again, Plaintiff's own sources indicates BlueCity's user base increased by *10 million* between the IPO and October 2021.

## III.  PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE NON-DISCLOSURE UNDER ITEM 303 OF REGULATION S-K

Item 303 of Regulation S-K "imposes a disclosure duty 'where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operations.'" *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012) (quotation omitted). Item 303 "requires that a plaintiff plead, with some specificity, facts establishing that the defendant had *actual knowledge* of the purported trend." *Blackmoss Inv. Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *9 (S.D.N.Y. Jan. 14, 2010) (emphasis added). And as to a non-U.S. issuer, Item 303 instructs the company to discuss "pertinent governmental economic, fiscal, monetary, or political policies or factors that have materially affected or could materially affect" finances or operations. 17 C.F.R. § 229.303 ¶ 9; *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) (dismissing Item 303 claims where management lacked knowledge of "any particular decline in sales" despite allegations that the company monitored inventory in real-time).

Plaintiff's six-paragraph (AC ¶¶ 138-143) Item 303 claim fails because the underpinning of Plaintiff's causes of action—the tightening of regulations around LGBTQ content—was disclosed in the Offering Materials, and, as Plaintiff pleads, through numerous public events,

23

disclosures, and publications.  *See, e.g.* AC ¶¶ 66-114; *supra* Background § D; Pr. at 32 (warning Company app could be "removed from app stores"); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013) (information "readily accessible in the public domain" cannot support non-disclosure liability) (quotation omitted), *aff'd*, 566 F. App'x. 93 (2d Cir. 2014); *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *7 (S.D.N.Y. Sept. 27, 2019) (no obligation to disclose "information that is publicly known . . . or which constitutes generally applicable laws and regulations"); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.").[24]

Furthermore, as discussed, Plaintiff likewise pleads no facts concerning any potential, or actual, undisclosed material trend that could or did have a material impact upon BlueCity's operations, and so fails to plead that BlueCity's management was aware of such a trend.[25]

## IV.    THE COURT SHOULD STRIKE PLAINTIFF'S JURY DEMAND

Plaintiff's jury demand should be stricken.  Plaintiff and each putative class member is bound by the Deposit Agreement that governs BlueCity's ADS—which is attached to the Registration Statement and addressed in the Prospectus—including specifically the jury waiver provision.  Pr. at 188.[26]  The Deposit Agreement provides that "[ADS holders] . . . hereby irrevocably waive[], to the fullest extent permitted by applicable law, any right it may have to a

---

[24] BlueCity's Registration Statement contains 60 pages of robust and detailed Risk Factors, which renders any supposed omissions immaterial under Item 105 of Regulation S-K.

[25] Plaintiff fails to plead violations of Section 11 and 12 means they fail to allege a violation of Section 15.  *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (Section 15 liability requires "'a primary violation' of § 11 and control of the primary violator.") (internal citation omitted).

[26] Liu Decl. Ex. V (Form of Deposit Agreement).

trial by jury in any suit, action or proceeding against . . . the company."[27]  Plaintiff and the putative class agreed to waive their rights to a jury trial, and therefore their jury demand should be stricken.

**CONCLUSION**

For the reasons discussed herein, BlueCity respectfully seeks dismissal of the Amended Complaint, with prejudice.

Dated: September 2, 2022          By:  */s/ Michael B. Carlinsky*
      New York, New York                Michael B. Carlinsky
                                        Xiao Liu
                                        Jacob J. Waldman
                                        Jianjian Ye
                                        **QUINN EMANUEL URQUHART
                                         & SULLIVAN, LLP**
                                        51 Madison Avenue, 22nd Floor
                                        New York, NY 10010
                                        Telephone:  (212) 849-7000
                                        michaelcarlinsky@quinnemanuel.com
                                        xiaoliu@quinnemanuel.com
                                        jacobwaldman@quinnemanuel.com
                                        jianjianye@quinnemanuel.com

                                        *Attorneys for Defendant BlueCity Holdings
                                        Limited*

---

[27] *Id.* at 37.