**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUNHUI JIANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>BLUECITY HOLDINGS LIMITED, BAOLI MA, ZHIYONG (BEN) LI, ZHE WEI, WEI YING, COLLEEN A. DE VRIES, AMTD GLOBAL MARKETS LIMITED, LOOP CAPITAL MARKETS LLC, TIGER BROKERS (NZ) LIMITED, PRIME NUMBER CAPITAL LLC, R. F. LAFFERTY & CO., INC., AND COGENCY GLOBAL INC.,<br><br>Defendants. | Case No. 1:21-CV-04044-FB-CLP |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**BLUECITY HOLDINGS LIMITED'S MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.      PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS ........................... 2

        A.      The Court Can and Should Consider the Press Releases Cited by Defendants That Demonstrate Plaintiffs' Allegations Are False ...................................................... 2

        B.      Plaintiffs Fail to Allege Actionable Statements ...................................................... 3

II.     PLAINTIFFS FAIL TO PLEAD ANY ACTIONABLE NON-DISCLOSURE UNDER ITEM 303 OF REGULATION S-K ...................................................................... 8

III.    THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND ............................. 10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019) ...................................................................... 9

*In re Enzymotec Secs. Litig.*,
2015 WL 8784065 (D.N.J. Dec. 14, 2015) ............................................................... 7

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009) ...................................................................... 9

*Garnett v. RLX Tech. Inc.*,
2022 WL 4632323 (S.D.N.Y. Sept. 30, 2022) ......................................................... 8

*Gross v. GFI Grp., Inc.*,
162 F. Supp. 3d 263 (S.D.N.Y. 2016) ...................................................................... 4

*Horowitz v. Sunlands Tech. Grp.*,
2021 WL 1224517 (E.D.N.Y. Mar. 31, 2021) ......................................................... 9

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016) ....................................................................................... 7

*In re Merrill Lynch Auction Rate Sec. Litig.*,
2012 WL 1994707 (S.D.N.Y. June 4, 2012) ........................................................... 2

*Lehman Bros. Hldgs. Inc. v. Bethany Hldgs. Grp., LLC*,
801 F. Supp. 2d 224 (S.D.N.Y. 2011) .................................................................... 10

*Lin v. Interactive Brokers Grp., Inc.*,
574 F. Supp. 2d 408 (S.D.N.Y. 2008) ...................................................................... 3

*Lorenzo v. BlueCity Holdings Ltd.*,
Index No. 652894/2021 (Sup. Ct. N.Y. Cnty. Oct. 24, 2021) ............................. 1, 5

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016)). ................................................................................ 10

*Panther v. Jianpu Tech., Inc*,
2020 WL 5757628 (S.D.N.Y. Sep. 27, 2020) .......................................................... 7

*In re ProShares Tr. Sec. Litig.*,
889 F. Supp. 2d 644 (S.D.N.Y. 2012) ................................................................... 6, 7

*In re Qudian Inc. Sec. Litig.*,
2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ......................................................... 6

*Singh v. Schikan*,
106 F. Supp. 3d 439 (S.D.N.Y. 2015) ...................................................................... 5

*Willard v. UP Fintech Hldgs. Ltd.*,
527 F. Supp. 3d 609 (S.D.N.Y. 2021) ...................................................................... 5

*Xiang v. Inovalon Holdings, Inc.*,
254 F. Supp. 3d 635 (S.D.N.Y. 2017) ...................................................................... 7

Defendant BlueCity Holdings Limited ("BlueCity" or the "Company") respectfully submits this Reply Memorandum of Law in support of BlueCity's Motion to Dismiss the Amended Complaint ("Amended Complaint" or "AC"):

## PRELIMINARY STATEMENT

The Opposition makes perfunctory attempts to address the pleading failures in the AC, but only highlights the AC's fundamental flaws and confirms the claims are fraud by hindsight.[1]

*First*, the alleged "misstatements" are not false in isolation or in context. For example, Plaintiffs do not allege that BlueCity made misstatements about revenue or subscriber numbers attributable to its "membership services," but only that the discussion suggested a "path to profitability," which ignores that the statement says nothing about profitability. Similarly, the Opposition fails to address that multiple press releases on BlueCity's website—cited in the Company's motion to dismiss (the "MTD")—prominently feature such terms as "gay" and "LGBTQ," which directly contradicts the AC's allegations that the Company scrubbed those words from its website (Plaintiffs argue only that the Court should ignore this information).

*Further*, the Opposition acknowledges that the Company ***disclosed*** the regulatory risks complained of in the AC. Opp. 4.[2] The Company's robust disclosures included the specific January 2019 regulations and their potential effect on compliance costs; that BlueCity would have to, but might not be able to, comply with changing regulations; and that BlueCity disclosed the

---

[1] Shortly before Plaintiff filed the Opposition, Justice Andrew Borrok of the New York State Supreme Court's Commercial Division dismissed, ***with prejudice***, at the pleading stage, the parallel state class action that was pending against BlueCity. *See Lorenzo v. BlueCity Holdings Ltd.*, Index No. 652894/2021 (Sup. Ct. N.Y. Cnty. Oct. 24, 2021). The Court rejected, among other arguments, that discontinuance of *BluedBaby* nine months ***after*** the IPO was sufficient to "allege any facts which support the theory that the Offering Documents were therefore materially misleading when issued with respect to the discontinuance" of *BluedBaby*. *Id.* at 2. The decision is attached as **Appendix A**.

[2] The MTD is cited as "Mot. __"; the Opposition is cited as "Opp. __".

potential for adverse regulatory action—including shutdown—in "any jurisdiction," necessarily including China where every investor knows BlueCity operates.

*Finally*, the Opposition relies heavily on identifying general market and regulatory risks that failed to materialize. The Opposition cites the failure of *other* LGBTQ apps in China in order to stress regulatory risk, but ignores that BlueCity has nonetheless survived and *thrived* while competitors faltered. In other words, Plaintiffs' dire, retrospective predictions for BlueCity were incorrect, and cannot support Plaintiffs' claim that BlueCity's disclosures were inadequate.

The Company respectfully seeks dismissal of the Amended Complaint, with prejudice.

## ARGUMENT

## I.      PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS

### A.      The Court Can and Should Consider the Press Releases Cited by Defendants That Demonstrate Plaintiffs' Allegations Are False

The MTD demonstrates the falsity of Plaintiffs' claim that BlueCity scrubbed such terms as "gay" and "LGBTQ" from its Chinese-language website, AC ¶ 97, through example after example of press releases that use those terms over and over and are ***available on BlueCity's Chinese-language website***. Mot. 10-11. Plaintiffs concede the Court can consider material on which Plaintiffs rely in the AC, *id.* 2 n.1, which thus includes BlueCity's Chinese-language website. AC ¶ 97. But Plaintiffs cannot base fraud allegations on the content of the Company's website, then tell the Court it can look only at the parts of the website that might support Plaintiffs' claim, and not at the press releases. Regardless, it is well-settled that the Court can consider press releases to "establish[] that the information was publicly available." *See In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at \*2 (S.D.N.Y. June 4, 2012). Plaintiffs' claim that BlueCity made a "careful decision to avoid such terms in its Chinese-language website," AC ¶ 97, is false, and

Plaintiffs' conclusion that the website "is a sign that the Offering Documents glossed over and concealed the serious headwinds to profitability faced by BlueCity," *id.*, is thus also false.

**B.      Plaintiffs Fail to Allege Actionable Statements**[3]

The Opposition fails meaningfully to address many of the MTD's detailed reasons that each alleged misstatement is inactionable, relying instead on the notion that they are generally misleading "in context."  This notion is likewise incorrect.

**Statement #1**.  As the MTD makes clear, the statement that "we expect revenues generated from our recently launched membership services will grow quickly" is inactionable because, among other things, (i) the Prospectus at issue shows membership services revenue and subscribers were rapidly increasing, and (ii) this statement ***nowhere mentions profitability***.  Mot. 14; *see also See Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 418 (S.D.N.Y. 2008) (no falsity where "[t]he prediction was exactly on the money.").  The Opposition reiterates that membership services could not "have been the path to profitability that the company claimed," Opp. 15, and that, by launching membership services, "BlueCity made itself like *Zank* . . . and other apps that were shut down for violating the PRC's regulations," *id.*  This again ignores that **Statement #1** says nothing about profitability.  Further Plaintiffs offer only speculation to suggest the Company did not truly expect membership services revenue to grow quicky—which is what happened—or that launching those services would harm the Company.  Plaintiffs cannot allege falsity based

---

[3] The MTD established that Plaintiff's causes of action sound in fraud and are subject to Rule 9(b).  Mot. 8-9.  Plaintiff ***does not dispute*** that their central theory—the Company concealed risks so it could "rush[]" an IPO to market," AC ¶ 127—is a classic fraud claim.  They also do not dispute that they cannot avoid Rule 9(b) simply by stating that they do not allege fraud.  Mot. 9. Yet the Opposition's sole response is to reassert the ineffective disclaimer that the AC "does not allege fraud" and its claims "are not subject to" Rule 9(b).  Opp. 9.

solely on disagreement with Company strategy, particularly where Plaintiffs fail to plead a single fact that launching membership services had any adverse consequences for the Company at all.[4]

**Statement #2**.  The Company's statement that it would "continue to diversify our product and service offerings and expand our monetization channels" is inactionable because (i) Plaintiffs do not dispute that the Company was developing new products and services; (ii) Plaintiffs wrongly assume BlueCity could not expand LGBTQ-related offerings, contrary to the membership services discussion above; (iii) it is puffery; and (iv) Plaintiffs offer no factual support for the claim that healthcare offered "unprofitable and low margin" options.  *See* Mot. 16-17.

Plaintiffs respond with wordplay.  First, Plaintiffs claim the undeniably new initiatives listed in the Prospectus, *see* Mot. 16, do not count as "diversification" because the Company already operated in those areas.  But Plaintiffs offer no meaningful reason that adding new products and services is not diversification, nor any non-conclusory reason that a reasonable investor would not consider new products and services to be diversification.  Second, the alleged misstatement says BlueCity will "diversify our product and service offerings"—it does not remotely say or imply that BlueCity will launch products or services ***only*** in new business segments.  Additionally, Plaintiffs ignore several opinions that the generic "growth" reference is puffery, Mot. 17, asserting only that **Statement #1** could "reasonably be interpreted as misleading," Opp. 23, on the basis of an inapplicable opinion where the defendant made a statement ***knowing*** the opposite was true in order to benefit himself.  *Gross v. GFI Grp., Inc.*, 162 F. Supp. 3d 263 (S.D.N.Y. 2016).

---

[4] Plaintiff argues that the bespeaks caution doctrine does not apply to **Statement #1**.  But Plaintiff pleads no facts suggesting the Company lacked reasonable grounds to believe "membership services" would generate increasing revenues—which is what happened.  Further, the MTD identifies numerous warnings and Company disclosures, including that the Company was not profitable, that new monetization strategies might well fail, and that regulations could have adverse consequences for the Company.  Mot. 4-6.  And Plaintiff's assertion that express Company expectations are not forward-looking is simply wrong.  *Id.* at 15 (citing authority).

4

**Statement #3**.  The MTD makes clear that **Statement #3**, about potentially monetizing new businesses, including *BluedBaby*, was not false given (i) Plaintiffs allege no contemporaneous, undisclosed facts; (ii) the Company disclosed that *BluedBaby* comprised a tiny fraction of Company revenue, so investors could determine for themselves whether *BluedBaby* was "gain[ing] great traction" or experiencing "early success"; and (iii) "monetization upside" is a protected forward-looking statement.  Mot. 18-19. *See also Lorenzo*, No. 652894/2021, at 2 (rejecting substantially similar claims arising from discontinuance of *BluedBaby* business).

Plaintiffs' response mischaracterizes the Prospectus.  Plaintiffs claim the Prospectus characterized *BluedBaby* as "one of BlueCity's primary businesses."  Opp. 16.  Setting aside the failure to plead this, it is misleading: the Company in fact identified four primary revenue sources, the very last of which was a miscellaneous "others" category that included family planning.  Pr. at 89.  Regardless, Plaintiffs do not dispute that the Company disclosed *BluedBaby*'s tiny revenue share, and thus investors could judge for themselves the business' level of success.  Mot. 18.  Nor do Plaintiffs identify any misrepresentations about the number of children for which *BluedBaby* was responsible, nor allege how long *BluedBaby* should have taken to result in parenthood.[5]

**Statement #6**.  The MTD also made clear that the Company's warning that "in early 2018, dozens of apps for the LGBTQ community, including *Blued*, were blocked by the Google app store upon the request of the Indonesian government" was not misleading because, among other things, the rest of the statement made clear that the Company could not assure investors of continuing operations "in ***any jurisdiction***," Mot. 21 (emphasis added), and every reasonable investor understands that BlueCity's primary jurisdiction is China.  Plaintiffs' attempt to distinguish *Singh v. Schikan*, 106 F. Supp. 3d 439 (S.D.N.Y. 2015) and *Willard v. UP Fintech Hldgs. Ltd.*, 527 F.

---

[5] Plaintiff does not appear to take issue with **Statements #4** and **#5**, and so concedes them.

Supp. 3d 609 (S.D.N.Y. 2021) fail for this reason alone: the purportedly undisclosed peril to BlueCity's operations was in fact disclosed, and further discussion would not have "significantly altered the total mix of information." *Id.* at 618 (quotation omitted); *see also In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) (alleged misstatement not material where three Chinese news articles showed facts were "already in the mix of public information").

Indeed, the Company made numerous disclosures on this issue, including that regulations were "subject to change and uncertain interpretation" that could "harm our business," Mot. 6 (quoting Pr. at 19) and could be "costly to comply with" or subject BlueCity to "administrative penalties and even criminal liabilities," *id.* 6 (quoting Pr. at 19).  And the Company made clear "objectionable" content might have to be removed, or could result in removal of BlueCity from app stores.  *Id.* 7 (citing Pr. at 32).  The Opposition fails to establish the above was misleading or insufficient.  Plaintiffs cannot plead that disclosures about ***potential*** issues were inadequate where, as here, Plaintiffs fail to plead that the supposed risk had materialized or the alleged regulations had any ***actual*** impact on BlueCity (beyond disclosed compliance costs).  Plaintiffs' quibbling that BlueCity did not disclose that LGBTQ content was "*per se* 'objectionable'" fails to state a claim, Opp. 10, because this second-guessing does not address why the disclosures were inadequate for the specific risks faced by BlueCity, particularly in light of Plaintiffs' allegations that regulations shut down 18 competitors while BlueCity thrived.  *See* Mot. 7, 13 (citing article incorporated in AC for fact that BlueCity added ***millions*** of users as of October 26, 2021); *see also id.* 21 (noting Plaintiffs' failure to identify any "fundamental changes" to BlueCity's business); *In re ProShares Tr. Sec. Litig.*, 889 F. Supp. 2d 644, 655 (S.D.N.Y. 2012), *aff'd*, 728 F.3d 96 (2d Cir. 2013) (company need not disclose every possible risk permutation).

None of Plaintiffs' authorities supports the claim that BlueCity made inadequate disclosures about the risk facing the Company.  Each addresses facts where a company **knew** it had failed to comply with regulations or failed to disclose the **known** impact of regulations.  *See, e.g.*, *Panther v. Jianpu Tech.*, *Inc*, 2020 WL 5757628, at *12 (S.D.N.Y. Sep. 27, 2020) (disclosures concerning hypothetical regulatory breaches were misleading where the Company failed to disclose ongoing illegal operations on its online platform); *In re Enzymotec Secs. Litig.*, 2015 WL 8784065, at *15 (D.N.J. Dec. 14, 2015) ("generalized warnings" insufficient where Defendants "knew, or should have known, of the specific regulations **and their likely effect**") (emphasis added): *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 n.8 (2d Cir. 2016) (company was required to disclose ongoing fraud, even if effect was uncertain, given company knowledge of "serious, ongoing criminal and civil investigations that exposed [the company] to potential criminal and civil liability"); *Xiang v. Inovalon Holdings, Inc.* 254 F. Supp. 3d 635, 644 (S.D.N.Y. 2017) (company was required to disclose potential tax law changes where effect was certain, even if specifics of effect were uncertain).  None of these supports liability where, as here, Plaintiffs allege changing regulations but fail to plead any **undisclosed** effects or uncertainties.  Rather, based on BlueCity's unique position—having navigated all existing regulations and thrived as a business— Plaintiffs offer no reason BlueCity's disclosures were not commensurate with risks the Company actually faced.[6]  *See In re ProShares*, 889 F. Supp. 2d at 655 (company need not disclose every possible risk).

---

[6] Plaintiff offers no response to any of the reasons that **Statement #7** is inactionable, Mot. 22-23, but instead appears to argue generally, as with **Statement #6**, that BlueCity's disclosures are inadequate.  Plaintiff's arguments fail for the reasons stated in the MTD and above.

## II.      PLAINTIFFS FAIL TO PLEAD ANY ACTIONABLE NON-DISCLOSURE UNDER ITEM 303 OF REGULATION S-K

The MTD established two critical points that defeat Plaintiffs' Item 303 claim: (i) the supposedly undisclosed trend of tightening regulations was *disclosed* in the Prospectus and, in any case, public knowledge, Mot. 23-24;[7] and (ii) as discussed above, Plaintiffs fail to plead why management's views on disclosure were insufficient in light of the actual risks facing BlueCity.

Plaintiffs claim BlueCity "downplayed the severity of the PRC's regulations," which is little more than quibbling with BlueCity's judgment as to the potential impact of the regulatory landscape.  Opp. 17.  And Plaintiffs claim BlueCity was required to disclose certain details "because they were reasonably likely to materially affect BlueCity's business and financial condition." *Id.* at 18.  Again, Plaintiffs offer no support for this statement, but allege the opposite: that BlueCity navigated existing regulations, and that its disclosures reflect the risks specific to BlueCity.  Significantly, far from Plaintiffs' gloomy, retrospective assertions, BlueCity reaped rewards from launching its "membership services" in 2018.  *See* Mot. 14 (detailing rising revenue an subscriber base).

As the MTD made clear, Plaintiffs also *plead* that China's regulations were public and its LGBTQ policies were well-known, including by referencing such English-language sources as the *Financial Times*, *see* Mot. 12; *see also* May 12-13 (pleading May 2020 study that quotes Mr. Ma as being "the person in charge of the largest gay website in China," and further explains that BlueCity "*thrives* in China").  Further, the Prospectus made robust disclosures concerning the regulatory environment and the risks to BlueCity.  *See supra* at _; *see also Garnett v. RLX Tech. Inc.*, 2022 WL 4632323, at *24 (S.D.N.Y. Sept. 30, 2022) (information regarding regulatory

---

[7] Plaintiff's thinly-pleaded Item 105 claim fails for the same reasons.

actions of foreign governments was "publicly known" to U.S. investors where information was equally available to investors and defendant, even if not widely circulated); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 255 (S.D.N.Y. 2019) (rejecting argument that knowledge of Japanese markets was not in the public domain even though articles disclosing economic conditions were in specialized or Asian publications, and Japanese legislation was highly complex and technical and not available in English at the time); *see also* Mot. 24 (citing authority that securities laws do not require disclosure of general regulations).

By contrast, Plaintiffs' authorities concern limited or obscure publications, not public pronouncements that, according to Plaintiffs, addressed important aspects of BlueCity's business. *See Horowitz v. Sunlands Tech. Grp.*, 2021 WL 1224517, at *2 (E.D.N.Y. Mar. 31, 2021) (Block, J.) (addressing whether article in *Beijing News* was sufficiently well-known to start the statute of limitations, and noting that "[d]etermining when a claim accrues often requires a fact-intensive inquiry") (quotation omitted); *In re China Mobile Games & Entm't. Group, Ltd. Secs. Litig.*, 2016 WL 922711, at *9 n.12 (S.D.N.Y. Mar. 7, 2016) (declining to find that Chinese-language, anonymous, short-seller report "contained publicly available information"); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) (three Chinese-language newspaper articles did not render something a "matter[] of general public knowledge"). Further, Plaintiffs offer no reason a reasonable investor is not expected to know about regulations issued by the Chinese government relating specifically to an investment in BlueCity's China-based business, much less how investors could not have "understood" the "implications" of the same regulations that Plaintiffs claim were clear. *See* Opp. 10, 18 (quotation omitted). For the same reason, Plaintiffs cannot assert it is "fundamentally unfair" to expect U.S. investors to have basic knowledge about the operating landscape, in China, of their own China-based investment. *Id.* 20.

## III.    THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND

The Opposition acknowledges the jury waiver ("Defendant cannot enforce this jury trial waiver"), quotes the multi-paragraph portion of the Prospectus that describes the waiver to investors, and concedes that the waiver is contained in a contract "incorporate[d] by reference" into the Prospectus. *See* Opp. 24.  And although Plaintiffs claim the Form of Deposit Agreement was "signed only by third parties," Plaintiffs do not and could not meaningfully challenge that it binds investors. *See* Mot. 24-25; Def. Ex. V.  And Plaintiffs cannot claim investors were unaware of waiver-related information at page 188 of the Prospectus, but were still misled by statements at, for instance, pages 90 (**#1)**, 92 (**#5),** 118 (**#3**), and 119 (**#4**).  Plaintiffs' argument confirms their case is a *post-hoc* effort to scour the Prospectus for buried sentences that appear false in retrospect. *See* Mot. 17 (citing *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 499 (3d Cir. 2016)). Finally, the Prospectus' discussion about how a court might address the waiver shows only that the Prospectus disclosed the waiver to investors, who priced any concerns into their purchase decision. *See* Pr. at 69 (advising investors to "consult legal counsel . . . before investing in the ADSs."); *see also Lehman Bros. Holdings Inc. v. Bethany Holdings Grp., LLC*, 801 F. Supp. 2d 224, 232 (S.D.N.Y. 2011) (cited by Plaintiffs) ("This is not a case where one party's dire financial condition gave his counterparty undue leverage.").  Having made this bargain, Plaintiffs cannot piecemeal reject portions that Plaintiffs no longer find appealing.

### CONCLUSION

For the reasons discussed herein, BlueCity respectfully seeks dismissal of the Amended Complaint, with prejudice.

Dated: December 9, 2022          By: */s/ Michael B. Carlinsky*
      New York, New York               Michael B. Carlinsky
                                           Xiao Liu
                                           Jacob J. Waldman
                                           Jianjian Ye

10

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
michaelcarlinsky@quinnemanuel.com
xiaoliu@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jianjianye@quinnemanuel.com

*Attorneys for Defendant BlueCity
Holdings Limited*